## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CORLIVEETHO MCMILLIAN,** | : | **Civil No. 1:11-CV-2223** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Chief Judge Conner)** |
| | : | |
| **JEROME WALSH, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

The plaintiff, Corliveetho McMillian, a state inmate proceeding *pro se*, initiated this action by filing a complaint on November 30, 2011. (Doc. 1)  As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation.  Thus, on November 30, 2011, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion.  The motion may therefore be granted if:  (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 4, p.2)

Over the past two years, through the process of litigation, the claims advanced by McMillian have now been narrowed and focused. Thus, currently the sole remaining claim in this case relates to a prison cell extraction which took place at the State Correctional Institution, (SCI) Dallas, on April 2, 2011. McMillian alleges that the correctional defendants used excessive force against him in the course of this April 2, 2011, cell extraction, and further contends that medical staff displayed deliberate indifference to his medical needs at the time of this cell extraction incident.

On September 26, 2013, the corrections defendants filed a motion for summary judgment on the last remaining claims in this case. (Doc. 130.) This motion raised a straightforward legal argument. In this motion, the corrections defendants stated that this particular cell extraction had been videotaped by correctional officials. Citing this immutable witness, the videotape evidence, the defendants contended that as a matter of law they were entitled to judgment in their favor since the videotape does not depict facts which could be construed as exhibiting either excessive force or deliberate indifference to serious medical needs.

The undisputed facts as disclosed by the videotapes revealed that on April 2, 2011, McMillian was housed in the Restricted Housing Unit at SCI Dallas. On the morning of April 2, McMillian began acting out, using his bedding to obscure the

view of his cell, and making threatening and self destructive comments to staff. After a nurse conducted an assessment of McMillian, it was determined that he should be moved to a psychiatric observation cell for his own safety. Staff then engaged in several efforts to persuade McMillian to voluntarily leave his cell, efforts which were unavailing. Recognizing that a compulsory cell extraction might be necessary correctional staff coordinated with medical personnel, who authorized the use of a chemical agent, OC spray, as part of this cell extraction, but did not permit the use of any electronic body immobilizer device in connection with the planned use of force.

With the use of OC spray approved, a cell extraction team then assembled and reported to McMillian's cell where the lieutenant in charge of that team, Lt. Bleich, again attempted to convince McMillian to remove the obstructions from his cell door and window, and voluntarily comply with this movement to the psychiatric observation cell. When McMillian refused repeated instructions from staff, the cell extraction team engaged in a single measured application of OC spray, inserting this chemical agent through the cell door aperture. The application of this chemical agent through the cell door was brief and concluded in a matter of seconds.

After a few moments, McMillian then complied with staff instructions, withdrawing the cell door obstructions, removing his clothing, submitting to a visual inspection, and dressing in an anti-suicide smock before he allowed himself to be handcuffed and removed from his cell. McMillian then followed staff to an adjacent

room, where medical personnel briefly examined and treated him before he was taken

to the psychiatric observation cell. At no time during this cell extraction was

McMillian struck or assaulted, and at no time did he display any acute physical

distress. Rather, the videotape is notable for the restraint exercised by correctional

staff during this prisoner transfer. Indeed, the only use of force in connection with this

event was the single, brief application of OC spray to McMillian's cell, a use of force

compelled by McMillian's refusal to comply with staff orders, or respond to staff

entreaties.[1]

On the basis of this immutable factual record, the defendants sought summary

judgment in September, 2013. For his part, McMillian took no action with respect to

---

[1]We note that, following this uneventful prisoner transport, while McMillian is housed in his new cell the video captures a brief verbal exchange between McMillian and an unidentified correctional officer. This exchange, while unnecessary and inappropriate does not rise to the level of a matter of constitutional dimension since "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007).

this motion for six weeks, until November 15, 2013, when he requested an extension of time in which to respond to this pending summary judgment motion. (Doc. 142)

We granted this request, but once again put the plaintiff on notice of this obligations as a litigant in federal court, advising McMillian that:

> [T]his motion is GRANTED, as was the previous request made by McMillian, and with respect to this motion filed by defendants the plaintiff shall file a response to the motion in accordance with Local Rule 7.6 on or before **November 27, 2013**. Pursuant to Local Rule 7.7 the defendants may then file a reply brief fourteen days after the filing of the plaintiff's brief, on or before **December 11, 2013**. All briefs must conform to the requirements prescribed by Local Rule 7.8. The plaintiff is also advised that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:
>
>> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.
>
> Local Rule 7.6 (emphasis added).
>
> It is well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the

court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc</u>., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  Therefore, failure to comply with this briefing schedule may result in dismissal of this action.

(Doc. 144)

Despite our admonition, this response deadline has now passed and McMillian has not responded to this motion.  Therefore, in the absence of any timely response by the plaintiff, we will deem the summary judgment motion to be ripe for resolution.

For the reasons set forth below, we recommend that this summary judgment motion be granted.

## II.     **Discussion**

### A.     **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that

Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after

service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc</u>., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

## B. Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the Court, and will not be disturbed absent

an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.

2002)(citations omitted). That discretion, however, while broad is governed by certain

factors, commonly referred to as Poulis factors. As the United States Court of Appeals

for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a District Court has abused its discretion in dismissing for failure

to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting

Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis

factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether

a District Court abused its discretion in dismissing a plaintiff's case.  Mindek v.

Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263.

Consistent with this view, it is well-settled that " 'no single Poulis factor is

dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' <u>Adams,</u> 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has allegedly failed to exhaust his administrative remedies before filing this lawsuit and now has failed to respond to a defense motion which highlights this earlier procedural failure.  The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court.  Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with

instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this

factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C.     The Plaintiff's Claims Fail on Their Merits

McMillian's Eighth Amendment claims fail on their merits. The defendants have moved for judgment on these claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial

would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving

party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not

sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. In fact, it is clear that, in this setting, we must view the facts in the light depicted by the videotape. See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). This principle applies with particular force to inmate excessive force claims which entail videotaped encounters with staff. Where a videotape refutes an inmate's claims that excessive force was used against her, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate. Tindell v. Beard, 351 F.App'x 591 (3d Cir. 2009).

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment claims, since McMillian advances an Eighth Amendment claim against the remaining defendants in his complaint alleging that prison staff violated his Eighth Amendment rights by using excessive force against him. This Eighth Amendment claim is judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, but are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if

-18-

the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000).

With these tenets in mind we turn to a consideration of the Eighth Amendment claims advanced here by McMillian. At the outset, Eighth Amendment excessive force claims entail a showing of some subjective intent to injure. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Thus, the keystone to analysis of an Eighth Amendment excessive force claim often entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable

inference of wantonness in the infliction of pain." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Furthermore, in assessing such claims in a case where an encounter is captured on videotape we are mindful of the fact that when "videotape refutes [an inmate's] assertion that defendant[s] used excessive force," or when the "video shows that [an inmate] did not suffer any physical distress, and a medical report indicates that he had no visible swelling or injuries," we should conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically," and may enter summary judgment on an excessive force claim. Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009).

In addition, in the specific factual context of excessive force claims based upon allegations relating to a prisoner's handcuffing, courts have acknowledged that, in certain instances, government officials are entitled to qualified immunity as a matter of law. Gilles v. Davis, 427 F.3d. 197, 207 (3d Cir. 2005). With respect to these particular excessive force claims, the test for qualified immunity can be simply stated: "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff,[ ] the officer's use of force was objectively reasonable under the circumstances.' " Id. Finally, courts have consistently found that an isolated discrete use of a chemical agent like OC spray does not state an Eighth Amendment claim. See, e.g., Luciano v. Lindberg, 1:CV-09-01362, 2012 WL 1642466 (M.D. Pa. May 10, 2012) Picozzi v.

Haulderman, Civ. No. 4:08–CV–0926, 2011 WL 830331, at *5 (M.D.Pa. Mar. 3, 2011) (plaintiff failed to establish an excessive use of force claim where record establishes that the force used, pepper spray, was necessary and the minimum amount needed to get the plaintiff to an area where she could be medically treated); Soto v. Dickey, 744 F.2d 1260, 1270 (4th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed).

Guided by these benchmarks, we conclude that the defendants are entitled to summary judgment in this case on McMillian's Eighth Amendment excessive force claims since the immutable witnesses, the videotape evidence, plainly "refutes [the] assertion that defendant[s] used excessive force," and we conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically." Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009).

The evidence regarding this use-of-force incident, which forms the basis for the plaintiff's excessive force claim, simply does not support the plaintiff's Eighth Amendment claims. Rather, the evidence reveals that the plaintiff's recalcitrant actions inspired the need to use force. The evidence further shows that this use-of-

force incident was modest in scope, duration and intensity, as the responding officers did little more than administer a single short burst of OC spray in order to gain control of the plaintiff. The evidence also shows that the plaintiff was seen by medical staff after this incident, and was found not to have suffered any injuries resulting from this use of force.

It is clear that this limited action by corrections staff, standing alone, does not state a constitutional claim since courts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim. See, e,.g., Luciano v. Lindberg, 1:CV-09-01362, 2012 WL 1642466 (M.D. Pa. May 10, 2012) Picozzi v. Haulderman, Civ. No. 4:08–CV–0926, 2011 WL 830331, at *5 (M.D.Pa. Mar. 3, 2011) (plaintiff failed to establish an excessive use of force claim where record establishes that the force used, pepper spray, was necessary and the minimum amount needed to get the plaintiff to an area where she could be medically treated); Soto v. Dickey, 744 F.2d 1260, 1270 (4th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed). Indeed, with respect to McMillian's excessive force claims, there is nothing in the videotape depiction of this episode that could even remotely be characterized as in any way malicious or sadistic, the essential prerequisite to an Eighth Amendment violation. Quite the contrary, the video is striking and notable for

the restraint exhibited by correctional staff, and for the care and attention which they give to McMillian.

We must view the facts in the light depicted by the videotape, and may not indulge in the"visible fiction" that McMillian's version of events, which is plainly contradicted by the video, creates a genuine and disputed issue of fact. See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.") Viewing these events through this analytical prism, and having carefully observed this videotape, it is simply impossible to say that any "reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically." Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009). Therefore, summary judgment is appropriate here on behalf of all defendants as to this claim.

But even if McMillian had stated a colorable constitutional claim, the defendants would still be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim McMillian must show the deprivation of a right secured by the United States Constitution or the laws of the

United States.  Satisfying these elements alone, however, does not guarantee that McMillian is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In the specific factual context of excessive force claims based upon allegations relating to a prisoner's handcuffing, or the use of OC spray, courts have acknowledged that, in certain instances, summary judgment is entirely appropriate. Gilles v. Davis, 427 F.3d. 197, 207 (3d Cir. 2005). With respect to these particular

excessive force claims, courts agree that: "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff,[ ] the officer's use of force was objectively reasonable under the circumstances.' " Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005). Courts have also consistently found that an isolated discrete use of OC spray does not state an Eighth Amendment claim. See, e,.g., Luciano v. Lindberg, 1:CV-09-01362, 2012 WL 1642466 (M.D. Pa. May 10, 2012) Picozzi v. Haulderman, Civ. No. 4:08–CV–0926, 2011 WL 830331, at *5 (M.D.Pa. Mar. 3, 2011) (plaintiff failed to establish an excessive use of force claim where record establishes that the force used, pepper spray, was necessary and the minimum amount needed to get the plaintiff to an area where she could be medically treated); Soto v. Dickey, 744 F.2d 1260, 1270 (4th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed).

Applying these benchmarks, and viewing the actions of correctional staff in the light depicted by the videotapes, we find that the defendants are entitled to qualified immunity in this case. The only force applied in this case was a single use of OC spray. That use of OC spray in this case was specifically authorized by medical staff, and was conducted in a fashion identical to other past uses which have been approved by the courts. Thus, nothing in the measured and restrained conduct depicted in the

videos could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore these officials should be entitled to qualified immunity from damages in this case.

Thus, a merits analysis reveals that the defendants are entitled to summary judgment on McMillian's claims.  Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims.  On these facts, we conclude that granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d

229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Summary Judgment Motion (Doc. 130), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of December, 2013.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge

-31-